USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 5/25/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEUFVILLE,

                Plaintiff,

-against-

METRO COMMUNITY HEALTH CENTERS, INC.

                Defendant.

22-cv-06002 (ALC)

DEFAULT JUDGMENT

**ANDREW L. CARTER, United States District Judge:**

      Plaintiff Sherie Neufville ("Plaintiff") brings this action against Defendant Metro Community Health Centers, Inc. ("MCHC" or "Defendant"). Plaintiff alleges a violation of Section 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA"). ECF No. 1. Before the Court is Plaintiff's motion for default judgment. ECF No. 12. After careful consideration, Plaintiff is **GRANTED** default judgment against MCHC on her claim for violation of ERISA.

## BACKGROUND

      Plaintiff commenced this action on July 14, 2022. *See* Compl., ECF No. 1. In her Complaint, Plaintiff alleges that she was employed by Defendant MCHC as a podiatrist from December 2016 until February 2022. Compl. ¶ 6. Defendant MCHC is a health clinic with its principal place of business in New York, New York. *Id*. ¶ 7. Plaintiff alleges she is a "participant" or "beneficiary" as those words are used in 29 U.S.C. § 1132(a)(1) and (a)(3). *Id*. ¶ 6.

      The Complaint alleges that in the autumn of 2021, Plaintiff formally applied for paid family leave to give birth to and care for a child from approximately November 22, 2021 through February 22, 2022. *Id*. ¶ 9. MCHC approved Plaintiff's leave request, but during her leave, MCHC informed Plaintiff that she would not have a job when she returned. *Id*. ¶¶ 9-10.

Plaintiff's Complaint alleges that "Defendant by discharging Neufville because she had attempted to take leave to give birth and to take care of a child , pursuant to a benefit plan maintained by Neufville's employer, interfered with, restrained, or denied the exercise of, or denied the attempt to exercise, Neufville's rights under ERISA." *Id*. ¶ 11. Plaintiff alleges that Defendant has violated ERISA. *Id*.

On July 19, 2022 formal service of process was effectuated on the Defendant. ECF No. 5. Defendant's answer was due August 9, 2022. The Clerk of the Court entered a Certificate of Default as to the Defendant on August 25, 2022. ECF No. 11. Plaintiff moved for default judgment on October 4, 2022. ECF No. 12. On March 28, 2023, this Court issued an Order to Show Cause why an order pursuant to Fed. R. Civ. P. 55 entering default judgment should not issue. ECF No. 15. Defendant was advised that failure to respond to the Order to Show Cause would be grounds for granting a default judgment in Plaintiff's favor. *Id*. Plaintiff was directed to serve a copy of the Order to Show Cause and the papers upon which it is based on Defendant by no later than March 31, 2023. *Id*. Plaintiff advised that Defendant was personally served. *See* Certificate of Service, ECF No. 16. To date, Defendant has not responded to the Order to Show Cause or otherwise participated in this action.

**STANDARD**

Rule 55 of the Federal Rules of Civil Procedure sets out a two-step process for the entry of default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). First, the Clerk of the Court automatically enters a certificate of default after the party seeking a default submits an affidavit showing that the other party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); Local Civil Rule 55.1. Second, after a certificate of default has been entered by the Clerk, the court,

2

on plaintiff's motion, will enter a default judgment against a defendant that has failed to plead or otherwise defend the action brought against it. See Fed. R. Civ. P. 55(b)(2).

By failing to answer the allegations in a complaint, the defaulting defendant admits the plaintiff's allegations. Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, a district court "need not agree that the alleged facts constitute a valid cause of action." *City of N.Y. v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)) (internal quotation marks omitted). Rather, the Second Circuit has "suggested that, prior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Mickalis Pawn Shop*, 645 F.3d at 137 (citations and internal quotations omitted.)

As to damages, a district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). This inquiry requires the district court to: (1) "determin[e] the proper rule for calculating damages on . . . [the] claim" and (2) "assess[ ] plaintiff's evidence supporting the damages to be determined under this rule." *Id*. Federal Rule of Civil Procedure 55(b)(2) "allows but does not require" the district court to conduct a hearing on the damages amount. *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const.*, LLC, 779 F.3d 182, 189 (2d Cir. 2015) ("[T]he court may conduct such hearings or order such references as it deems necessary and proper.") (citation and internal quotation marks omitted); *see also Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found, Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). Here, Plaintiff's submissions have not been contested.

**DISCUSSION**

In light of Defendant's default, the Court accepts as true the well-pleaded allegations in the Complaint, with the exception of those allegations relating to damages. *See Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC*, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true.") (internal citations, alterations, and quotation marks omitted).

**I.      Liability under ERISA**

Section 510 of ERISA provides: "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 1140. This section prohibits two types of employer discrimination: "First, an employer is precluded from discriminating against an employee for the purpose of interfering with an employee's exercise of certain rights[;] [s]econd, an employer is not permitted to discriminate against an employee for the purpose of interfering with an employee's attainment of certain rights." *Russell v. Northrop Grumman Corp.*, 921 F. Supp. 143, 147 (E.D.N.Y. 1996) (internal citations omitted).

"Section 510 was enacted primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'" *DiDonna v. Vill. Farms IGA, LLC*, No. 12-CV-1487 JS ARL, 2014 WL 2739418, at *8 (E.D.N.Y. June 16, 2014) (quoting *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988)). To prove unlawful

retaliation for the assertion of rights under ERISA, the employee must establish that the employer's action was at least partially motivated by the specific intent to engage in the prohibited retaliatory conduct. *Kreinik v. Showbran Photo, Inc.*, No. 02CIV.1172(RMB)(DF), 2003 WL 22339268, at *3 (S.D.N.Y. Oct. 14, 2003) (citing *Dister*, 859 F.2d at 1111). "Because direct evidence of intent is often scarce or non-existent in this context," the Second Circuit has adopted the Supreme Court's Title VII *McDonnell Douglas* burden shifting framework for claims brought pursuant to Section 510 of ERISA. *Id*. (citing *Dister*, 859 F.2d at 1112); *Russell*, 921 F. Supp. at 147.

Under this framework, "to establish a prima facie case for retaliation against an employee for exercising her rights under ERISA, a plaintiff must prove that: (1) the employee was engaged in a protected activity; (2) the employer was aware of employee's participation in the protected activity; (3) the employer took adverse employment action against the employee; and (4) a causal connection existed between the protected activity and the adverse action." *Giordano v. Thomson*, 438 F. Supp. 2d 35, 44 (E.D.N.Y. 2005). As explained previously, "it is essential that a plaintiff 'show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510.'" *Id*. at 45 (quoting *Dister*, 859 F.2d at 1111). Therefore, an ERISA cause of action will not lie "'where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment.'" *Dister*, 859 F.2d at 1111 (quoting *Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd*, 742 F.2d 1441 (2d Cir.1983)); *see also DeSimone v. Transprint USA, Inc.*, No. 94 CIV. 3130 (JFK), 1996 WL 209951, at *3 (S.D.N.Y. Apr. 29, 1996) ("an adverse change in that relationship that is motivated at least in part by the employer's desire to prevent the employee from attaining benefits under an employee benefit plan, including health and disability insurance benefits, is within the purview of the section.").

Here, Plaintiff alleges she attempted to take leave to give birth and to take care of a child, which is pursuant to a benefit plan maintained by her employer MCHC. Compl. ¶¶ 8, 11. Plaintiff's attempt to assert her right to employee benefits (paid leave) under her employee benefit plan satisfies the first element of a prima facie case. Because Plaintiff applied for leave and submitted an official Request For Paid Family Leave, New York State Form PFL-1, her employer was aware of her protected activity and thus she satisfies the second element. *Id.* ¶ 8. As to the third element, termination is sufficient to constitute an adverse employment action.

Plaintiff alleges that MCHC discharged Plaintiff while she was on leave "because she had attempted to take leave to give birth and to take care of a child pursuant to [the] benefit plan maintained by [MCHC]" and therefore "interfered with, restrained, or denied the exercise of, or denied the attempt to exercise, Neufville's rights under ERISA." Compl. ¶ 11. As to the fourth element of a prima facie case, a causal "'connection may be shown with either evidence of retaliatory animus directed against a plaintiff by a defendant or a close temporal proximity between the protected activity and the adverse action.'" *Gooden v. Joseph P. Addabbo Fam. Health Ctr., Inc.*, No. 21CV6313RPKSJB, 2023 WL 2709735, at *7 (E.D.N.Y. Mar. 30, 2023) (quoting *Grauer v. UBS Fin. Servs., Inc.*, No. 07-CV-5450 (LAP), 2008 WL 11398936, at *9 (S.D.N.Y. Dec. 17, 2008)).

The Complaint does not allege evidence of retaliatory animus directed against the Plaintiff. Therefore, the Court must ascertain the temporal gap between Plaintiff's protected activity and the adverse employment action. Plaintiff alleges that she formally applied for paid family leave in the "Autumn" of 2021 and that her family leave was scheduled from approximately November 22, 2021 until February 22, 2022. Compl. ¶ 8. The Complaint alleges Defendant informed Plaintiff "during [her] leave" that she would not have a job when she returned. *Id.* ¶ 10. Finally, Plaintiff alleges she

was "discharge[d] in February 2022." *Id*. ¶ 6. From the face of the Complaint, the Court infers that Defendant informed Plaintiff of the termination in February 2022. Thus, the temporal gap between the protected activity and the adverse action is likely three months.

"[I]n the Second Circuit, a gap 'beyond two or three months will [normally] break the casual inference.'" *See Gooden*, 2023 WL 2709735, at *7 (quoting *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019)).  Applying this reasoning, the Court finds that Plaintiff's Complaint has established that a causal connection could exist between the protected activity (taking leave pursuant to the employee benefits plan) and the adverse action (the termination), thus satisfying the fourth element of the prima facie case. Because Defendant has defaulted, it has not articulated a legitimate, non-discriminatory reason for the challenged employment action. Therefore, the presumption of retaliation is not rebutted, and Defendant is liable for violating Section 510 of ERISA.

**II.     Damages**

As to damages, Plaintiff submitted a declaration in support of her motion for default judgment. ECF No. 13.  It is unclear to the Court the amount of damages sought by Plaintiff. Plaintiff's counsel explains that he seeks an award of $31,040 in lost backpay damages and that he has attached Plaintiff's affidavit where she explains her damages. *See* Lichten Decl., ECF No. 13 ¶ 13. However, Plaintiff has not attached this affidavit. Additionally, in the Statement of Damages, attached as exhibit D to the declaration, Plaintiff's counsel states the "principal amount sued for" is $35,040.00. Ex. D to Lichten Decl., ECF No. 13-4.[1] Plaintiff does not explain this discrepancy. Additionally, Plaintiff's counsel requests attorney's fees and costs in the amount of $3,582.00.

---

[1] S*ee also* Proposed Default Judgment, Ex. F to Lichten Decl, ECF No. 13-6 (explaining that the award should be $40,051.09, including the principal amount of $35,040.00 plus interest at 9% from February 10

7

# CONCLUSION

Accordingly, having considered the Declaration of Stuart Lichten in support of the motion for default judgment, the Summons and Complaint previously filed in this action, and the affidavit of service thereof, it is hereby **ORDERED** that judgment be entered in Plaintiffs' favor against Defendant as to liability. Plaintiff is hereby **ORDERED** to file supplemental materials, including a memorandum of law, on or by **June 2, 2023** explaining both (1) the basis for the requested award amount and (2) the above-mentioned discrepancy in the requested award amount.

Should Defendant wish to contest damages, Defendant is hereby **ORDERED TO SHOW CAUSE** in writing by affidavit and memorandum of law filed with the Court and served upon Plaintiffs on or before **June 9, 2023** as to why an order should not be issued pursuant to Federal Rule of Civil Procedure 55 granting Plaintiffs' requested damages.

**SO ORDERED.**

Dated:   May 26, 2023
         New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

---

through September 10, 2022, amounting to $1,829, plus attorney fees of $3,000.00 and costs amounting to $582). There is no mention of the previously cited backpay amount of $31,040.00.